# Berks County *versus* Bertolet.

A miller or manufacturer of flour, who purchases grain, as well as raises it on his farm, and retails the flour at other places than his mill, is liable to taxation and payment of license fee, under the 11th section of the act of 22d April, 1846.

ERROR to the Common Pleas of *Berks county.*

The case came into court on an appeal by Bertolet from the decision of the appraiser of mercantile taxes.

It appeared on the hearing of the above appeal, that the said Isaac Bertolet was a resident citizen of the township of Oley, in the said county, and that he owned a flour and a grist mill in the said township; that he raised grain on his said farm, that he bought grain, and that he took tolls for grain ground for customers in his said mill; that he manufactured into flour at his said mill the said grain, and sold flour so manufactured to his customers at at his said mill, and that he sent flour so manufactured by him to the city of Reading and other places by his team from week to week through the year, and sold it out by the hundred to his customers.

On this state of facts it was contended by the county, that the said Isaac Bertolet was subject to a mercantile tax under the provisions of the 11th sec. of the act of the 22d of April, 1846. The section is as follows:

That hereafter all dealers in goods, wares and merchandize, the growth, product and manufacture of the United States, and every person who shall keep a store or warehouse, for the purpose of

[Berks County *v.* Bertolet.]

vending and disposing of goods, wares and merchandize, where such person is concerned or interested in the manufacture of such goods, wares and merchandize, shall be classified in the same manner, and required to pay the same annual tax and license fee, as is provided and required in relation to dealers in foreign merchandize: *Provided,* That mechanics who keep a store or warehouse at their own shop or manufactory for the purpose of vending their own manufactures exclusively, shall not be required to take out any license.

Bertolet was accordingly rated in class 14, at $7 00.

It was on the contrary contended by the said Isaac Bertolet that he was not subject to a mercantile tax.

The court below decided that Bertolet was not liable to be classified and subjected to taxation, or the payment of license fees.

Errors were filed to the decision of the court.

The case was argued by *P. Filbert,* for the county of Berks, and by *Banks* for Bertolet.

The opinion of the court was delivered by

ROGERS, J.—With the laudable intention of preserving intact the plighted faith of the commonwealth, the legislature in the performance of an imperious duty have been compelled from time to time to search out new objects, and to enlarge the subjects of taxation. Hence a series of statutes, which now form a complete system. To aid the legislature in their commendable efforts, the court has adopted an enlarged and liberal construction of their acts as in Shitz *vs.* Berks, 6 *Barr,* 82, and Savings Fund *vs.* Yard, 9 *Barr,* 360. In furtherance of justice, and to support the public credit, as is said in the preamble to the act, 22d April, 1846, entitled an act to provide for the reduction of the public debt, in the 11th section, it is provided, "That hereafter all dealers in goods, wares, and merchandise, the growth, product, and manufacture of the United States, and every person, who shall keep a store or warehouse for the purpose of vending and disposing of goods, wares, and merchandise, shall be classified" in the same manner, and required to pay the same annual tax, and license fee, as is provided and required in relation to dealers in foreign merchandise. Provided, That mechanics who keep a store or warehouse at their own shop or manufactory, for the purpose of vending their own manufactures exclusively, shall not be required to take out any license. Thus the distinction before made between foreign and domestic manufactures is abolished, and in all respects those acts must receive the same construction. The act of the 4th May, 1841, see *Dunlap,* 833, extends to all persons engaged in selling or vending goods, wares and merchandise, commodities or effects of whatsoever kind or nature. If the several acts in *pari materia,*

are to be construed together, which is the unquestioned rule, there is no difficulty whatever in bringing the manufacturer of flour within the general scope and intention. Flour is certainly a commodity in effect within the spirit and meaning of the several acts. But be this as it may, it may be embraced without doing violence to the language in the words, goods, wares, and merchandise.

. For not to insist on the two first, merchandise is defined to be goods or commodities sold or for sale. Nor do I understand this to be contested by the defendant in error. The defendant Bertolet, a citizen of Berks county, was the owner of a flour and grist mill, with a farm thereto attached. He raised grain on his farm, and also bought grain. He took tolls for grain ground for customers at his mill. He manufactured into flour the grain raised as well as bought. Sold the flour so manufactured to his customers, not only at his mill, but he sent it to the city of Reading and other places by his team, from week to week through the year, and sold it by the hundred weight to his customers. Is the defendant embraced within the spirit of the 11th section, so as to be compelled to take out a license, is the question?

The act clearly contemplates ten classes of persons, dealers in goods, wares, and merchandise, and persons who keep a store or warehouse for the purpose of vending and disposing of goods, wares, and merchandise.

Each of those persons are subject to assessment according to the classification in the act. A dealer is one who trades, buys or sells. If so, Bertolet is a dealer, for according to the case stated, he both buys and sells. He buys the grain, and when manufactured, sells the flour. It is true, he does not buy the flour, but he buys the materials of which it is composed, and this brings him within the spirit of the act. He is a dealer to all intents and purposes. According to the opinion of the court of Common Pleas, as I understand it, if he had bought the grain and sold it, or the flour and sold it, he would be included, but inasmuch as both are not conjoined, he is permitted to escape taxation. If we were construing a penal statute, perhaps such niceties as these would be allowable; but in my judgment, they are misplaced when applied to acts intended to support the credit of the commonwealth. But granting he is not a dealer, may not his mill be regarded as a store or a warehouse, and as such used, (as the case shews) for the purpose of manufacturing grain raised and bought by himself; also as a place of deposit, store or warehouse, for vending the flour, when manufactured, by retail. If so, there is no escape for him. The Court of Common Pleas concede he may be so regarded, but they came to the conclusion he is saved by the proviso. But in this I cannot agree. The proviso exempts mechanics under certain circumstances from taxation. But is Bertolet a mechanic,

[Berks county *v.* Bertolet.]

as the court supposed. A mechanic is an artizan or artist, which certainly does not in the ordinary acceptation of language import either a farmer, or the manufacturer of flour, nor do they come within the legal definition of that term, of which I am aware. A mechanic may be and usually and perhaps always is a manufacturer, but a manufacturer is not always a mechanic.

But granting the defendant to be a mechanic, is he entitled to the benefit of the proviso? He does not confine himself to sales at his mill, but, as is conceded, he sells his wares and commodities elsewhere, at the city of Reading and in the adjoining counties.

The proviso, as is unquestionable, exempts such mechanics only who keep a warehouse at their own shop, or manufacturing for the purpose of vending their own manufactures exclusively. If, however, they choose not to confine themselves within the bounds prescribed, they must be content to pay the taxes. Their being mechanics merely does not exempt them from taxation, unless they choose to comply with the conditions of the act. They have no right, without a license, to sell their goods elsewhere than at their own shop. This is too clear to admit of doubt. The good citizens of this state are content, at all times, to pay taxes, when they are satisfied with the objects of taxation; when the money raised is faithfully and honestly applied, and when the present burthens are made to bear equally on all. When any one of these requisites is lost sight of, dissatisfaction will exist. That equality is equity, and *e converso*, is felt by every man in the community, however humble, and I trust it may always be so. Apply the principle here. A man keeps a flour store in the city of Reading, and supplies his customers by the quarter, the hundred weight, or the pound. He is required to take out a license, and to pay in proportion to the amount of his business. A manufacturer from the country, in his immediate neighborhood, disposes of the same article, at his door, at an under price, and thereby materially interferes with his business, perhaps enabled to do so because he is exempt from the tax to which the other is subject. Has he not a just right and will he not complain of such partial legislation; and can it be believed the legislature, who always intend to do right, designed to sanction such palpable injustice? Nor will it lessen his sense of wrong, that the article is sold from a wagon, cart or wheelbarrow, and not at a store or warehouse, properly so called.

It is said the principle contended for by the plaintiff in error embraces every man who brings any agricultural product or manufactured article to market, including butchers, who buy cattle and supply the market with beef; the iron master, who takes from his furnace or forge his metal, iron or nails, *et id omne genus*.— Whether the principle now ruled will interfere with them, it is not intended to decide. "Sufficient to the day is the evil thereof;" each case will be decided when it arises. This is the only safe course,

for each case may depend on a variety of circumstances, regard-
ing as well the nature of the employment as 'the objects taxed. I
may, however, be permitted to remark, that if it should be found
to include a wider range than has heretofore been supposed, that
will be no insurmountable objection with me.    It is my decided
opinion that no person, with any pretext whatever, should be
permitted to escape from bearing his equal share of the present
burthens of the state.    As the debt was contracted for the benefit
of all, so each person must contribute, in all fairness, his equal
and just proportion.    That equality is equity, applies with over-
whelming force to the equalization of taxation among all the citi-
zens of the commonwealth.

A motion was made to quash the writ of error, on the ground
that this was not a proceeding according to the course of the com-
mon law.    And for this is cited 5 *Bin.* 24; Ruhlman *vs.* The Com-
monwealth, and Moore *vs.* Albright, 4 *S.* & *R.* 235.    We, how-
ever, consider this proceeding in the nature of a case stated, it
being obviously the intention to take the opinion of the court on
a state of facts conceded and agreed upon by both parties.

We are of opinion that the judgment be reversed, and judg-
ment entered for the county for seven dollars.